**In the Matter of CORAL AIR, INC. Debtor.**

**Tracon International, Inc. and Tracon International Airlines, Inc. Intervenors.**

Civ. No. 84/156.
Bankruptcy No. 81/0004.

District Court, Virgin Islands, D. St. Croix.

May 30, 1984.

980

George H.T. Dudley, Jr., Charlotte Amalie, St. Thomas, V.I. and Harold M. Cohen, Millburn, N.J., for Coral Air, Inc.

Gerald T. Groner, Christiansted, St. Croix, V.I., for Joseph H. Jaffe, Carol Rae Culliton and Harold M. Cohen, Esq.

Edward Haskins Jacobs, Christiansted, St. Croix, V.I., and Kurt E. Johnson, Glen Rock, N.J., for Tracon Intern., Inc. and Tracon Intern. Airlines, Inc.

Kenneth A. Rosskopf, Christiansted, St. Croix, V.I., for Caribbean Airline Corp.

Warren B. Cole, Christiansted, St. Croix, V.I., for Isherwood, Hunter & Colianni.

Todd Newman, Christiansted, St. Croix, V.I., for Aviation Associates and Coastal Air Transport.

Scott Silverlight, Jr., Christiansted, St. Croix, V.I., for Windward Passage Hotel.

Douglas Capdeville, Asst. U.S. Atty., Christiansted, St. Croix, V.I., for U.S. Internal Revenue Service.

Nan L. Blumenfeld, Charlotte Amalie, St. Thomas, V.I., for Sparky's, Inc.

Patricia M. Fitch, c/o V.I. Port Authority, Christiansted, St. Croix, V.I., for V.I. Port Authority.

Derek M. Hodge, Christiansted, St. Croix, V.I., for Romney Associates Ground Services, British Virgin Islands.

John F. James, Christiansted, St. Croix, V.I., for North American Airlines and Intern. Airlines.

## MEMORANDUM OPINION

DAVID V. O'BRIEN, District Judge.

Several creditors of Coral Air, Inc. ("Coral Air"), who were included in a plan of reorganization approved by the Bankruptcy Court, filed motions under 11 U.S.C. § 1112(b)(7) and (8) to convert this matter from a reorganization under 11 U.S.C. Chapter 11 ("the Bankruptcy Act") to a liquidation under Chapter 7 of the same act. They assert failure of Coral Air and others to meet the terms and conditions of the order approving the plan, and they claim a material default by Coral Air in meeting its obligations under the plan.

The Court will hold the motions for conversion in abeyance, and will fashion relief aimed at protecting Coral Air and its creditors under the plan, by exercising its authority under the Bankruptcy Act and the order confirming the plan.[1]

### I. FACTS

Coral Air, a small commercial airline serving the Virgin Islands, Puerto Rico and other Caribbean islands, filed its petition for reorganization under the Bankruptcy Act in 1981. On August 6, 1982, after rejecting one proposed plan, the Bankruptcy Court approved a plan submitted by

---

**1.** By order dated March 13, 1984, the District Court withdrew the Coral Air bankruptcy mat- ter to its jurisdiction. This is detailed in the text of this opinion.

Coral Air and Sun Rae, Inc., the latter a corporation still to be formed. Sun Rae, Inc. never came into existence, and its obligations under the plan became the responsibility of the individuals who undertook its implementation as shareholders of the approved, reorganized Coral Air. They were Joseph H. Jaffe, Carol Rae Culliton and Harold M. Cohen, Esq.

Under the plan, the claims of many, many unsecured creditors, themselves struggling businesses in this territory and elsewhere, were discharged and Coral Air was freed of their payment. A limited number of creditors were given coverage in the plan, and Coral Air remained responsible for payment of those debts.

The new shareholders operated Coral Air continuously from August 6, 1982 until September, 1983, when they sold their shares under a stock purchase agreement to Tracon International, Inc. ("Tracon"). One of the exhibits to that agreement was the plan of reorganization and the order confirming the plan. While Coral Air remained responsible for implementing the plan as the debtor, Tracon took over the responsibilities of Jaffe, Culliton and Cohen as shareholders.

The net effect of the transfer of control of Coral Air in terms of implementing the plan, however, was nil. This is because the Jaffe-Culliton-Cohen group had largely ignored the creditors under the plan, and these creditors fared no better under Tracon's direction of Coral Air.

It appears that Tracon took things a step further. It caused the assets of Coral Air, with two exceptions, to be transferred to a corporation it created, Tracon International Airlines, Inc. ("TIA"). This put those assets effectively beyond the reach of any creditors of Coral Air. The two assets not transferred were not capable of transfer. One was a so-called "interline account" by which Coral Air was credited monthly for passengers traveling on its routes with tickets issued by travel agents and other airlines. This account, in Chase Manhattan Bank, N.A. in New York, was not an actual checking account. Rather, at the end of each month, having been advised of a balance, if any to its favor, Coral Air could transfer by check the funds held there to its credit, to any account it chose. Under Tracon's control, the funds were transferred to accounts which did not bear the name of Coral Air.

The interline account served another purpose. Persons could be given Coral Air tickets for their own use on certain airlines where those airlines had granted permission by interline agreements. The usage of those tickets would be treated as a debit to the same account. This opportunity to use Coral Air tickets for widespread travel on other airlines could be a bonanza to unscrupulous persons, unless carefully controlled.

The second asset not transferred was the actual Federal Aviation Administration certificate granting Coral Air the right to act as a commercial air carrier in certain designated areas. It could not be summarily transferred. Tracon, however, circumvented this roadblock by the simple expedient of using TIA as manager of Coral Air under the certificate of the latter.

For a short time after transfer of Coral Air by the Jaffe-Culliton-Cohen group to Tracon, Jaffe and Culliton remained to continue to operate the airline. On January 10, 1984, a confrontation took place between Jaffe and Culliton on the one hand, and Tracon on the other, wherein the former arranged for armed guards to converge on the Coral Air hangar and disrupt Coral Air operations. The expressed intent of Jaffe and Culliton was apparently to "gain the attention" of Tracon officials to their grievances over Tracon's failure to meet its obligations under the stock purchase agreement.[2]

This exercise in self-help quickly gained Tracon's attention. On January 11, 1984, a

---

2. Some of the facts recited here are drawn from sworn testimony contained in the case of *Jaffe, et al v. Tracon International Airlines, et al,* Civil No. 84/150, in this court. This is an action among various parties arising out of the stock purchase agreement. As those facts are pertinent to the matter under consideration, they are included herein.

modification to the stock purchase agreement was signed by all the parties, and Jaffe and Culliton exited from further involvement in Coral Air operations.

On March 13, 1984, this Court, in a related matter, *C & W Electronics, Inc. v. Coral Air, Inc.*, Civil No. 83/10, decided to withdraw the entire matter of Coral Air from the Bankruptcy Court to the District Court pursuant to the Rules for the Interim Administration of the Bankruptcy Court adopted for the District of the Virgin Islands.

Thus did the District Court enter the maelstrom of Coral Air's affairs, and unexpectedly confront a thicket of contention.

## II. APPLICABLE LAW

■ Once a plan of reorganization is approved by the Bankruptcy Court, what jurisdiction does that Court, or the District Court have, over the matter? There is no question we have the power conferred by Section 1112(b)(7) and (8) of the Bankruptcy Act. If dissatisfied creditors, covered in the plan, converge on the Court demanding conversion, and they cite valid reasons, the Court can grant the conversion. This is an extreme step, however, and should be exercised only when a Court is satisfied that no fruitful avenue remains, other than liquidation.

The authority of the Court to take intermediate steps to enforce the plan, as an alternative to liquidation, rests in Section 1142 of the Bankruptcy Act, which grants the Court power to direct the debtor "and any other necessary party" to perform any act "necessary for the consummation of the plan." [3]

■ Clearly then, so long as the plan has not been terminated by fulfillment of its terms, the Court retains wide jurisdiction on a continuing basis to oversee those responsible for implementation of the plan, and to enter appropriate orders to enforce the intent and specific provisions of the plan.

That authority is furthered in this instance in the order granting approval entered on August 6, 1982, by which the Court retained jurisdiction "to make such orders as are necessary or appropriate to carry out the provisions of this Plan."

To this Court, those persons responsible under the law, the Plan, and the order confirming the plan include the debtor itself, Coral Air, no matter who controls it, the Jaffe-Culliton-Cohen group which submitted the plan to Bankruptcy Court and gained its approval, and anyone else to whom control of Coral Air is relinquished while the plan is still in effect. That latter entity in this case would be Tracon and the corporation it created to manage Coral Air, TIA. Indeed, it was for the purpose of having Tracon and TIA subject to the continuing orders of this Court in respect to the plan, that they were promptly granted permission to intervene in this matter.

## III. DISCUSSION

■ At the May 24, 1984 hearing requested by certain creditors, a veritable parade of lawyers appeared. Their collective refrain was identical: their clients were creditors under Classes Three through Five of the plan (Classes One and Two have been paid in full). They have not been paid. Agreements for payment have been ignored. They want action. Other creditors in Class Five, claiming wages due, also stood and asked to be paid.

Nearly all creditors expressed concern that because Tracon had arranged the transfer of Coral Air's attachable assets, pursuit of Coral Air to obtain judgment liens would be fruitless.

---

3. Section 1142 states in full:

    (a) Notwithstanding any otherwise applicable nonbankruptcy law, rule or regulation relating to financial condition, the debtor and any entity organized or to be organized for the purpose of carrying out the plan, shall carry out the plan, and shall comply with the orders of the court.

    (b) The court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by confirmed plan, and to perform any other act, including satisfaction of any lien, that is necessary for the consummation of the plan.

Harold M. Cohen, Esq., speaking for Coral Air, himself, Jaffe and Culliton, promised that new money would be quickly forthcoming if they remained in control of Coral Air. They had been placed back in control of Coral Air by order of this Court, entered effective May 21, 1984, in the action by *Jaffe, et al, supra.*[4] He proposed a program of payments to creditors using the interline account as the source. He suggested that if a schedule was met, within three months everyone owed money would be paid off, or be current under various agreements.

This brought Tracon's counsel to his feet protesting that what Cohen proposed was to use money generated by Tracon to meet obligations for which the Jaffe-Culliton-Cohen group was responsible.

This line of reasoning is disturbing for several reasons. First, it is the FAA certificate granted Coral Air which is the primary basis for Tracon's operations. And second, what Tracon apparently chooses to ignore is the fact of its own responsibility for implementing the reorganization plan as part of the overall requirements it assumed when it took over from Jaffe, Culliton and Cohen. By removing the assets of Coral Air to itself or to its control, thereby insulating them from claims of Coral Air creditors, and then paying only such prior debts as necessary to continued operations, Tracon loses credibility before this Court insofar as the now promised voluntary payment of claims is concerned. As part of our power under the Bankruptcy Act, we will order the return of those assets to Coral Air.

As stated earlier, this Court has returned control of Coral Air to the Jaffe-Culliton-Cohen group. This decision was based on the kind of evidence required for a temporary restraining order and before a full preliminary injunction hearing in *Jaffe et al, supra.* Control was returned to that group not because of the pleasurable thought of the Jaffe-Culliton-Cohen group operating Coral Air in a professional, effi-

cient and economical manner. Rather, the decision was based on that group's legal entitlement to control under the circumstances in existence at that time.

We recite all of the above to establish clearly that we have no greater confidence in that group's willingness to voluntarily meet the terms of the plan than we do in Tracon's. The moreso, we have no confidence that they can, on their own, operate Coral Air. And further, we intend to take whatever steps as are necessary to prevent Jaffe and Culliton from having any operational authority or involvement in Coral Air while the plan of reorganization is still in effect.

Jaffe and Culliton have shown themselves lacking in the experience and background necessary to the operation of an airline. Their act in bringing armed guards to the Coral Air hangar speaks tellingly of their disrespect for the rule of law in resolution of disputes. Jaffe demonstrated further his lack of respect for judicial authority when he admitted in the hearing on a preliminary injunction in *Jaffe, et al, supra,* that he had violated the express order of this Court against utilizing Coral Air tickets for interline purposes. He had directed another person to use such a ticket already in that person's possession, and had the further audacity to approach the director of operations for Coral Air, seeking additional tickets.

Since this Court is not immediately directing the liquidation of Coral Air, we must respect the rights of the Jaffe-Culliton-Cohen group as controlling shareholders. Notwithstanding, we intend to exercise our authority to control implementation of the plan by enforcing the promises they made at the creditors' hearing on May 24, 1984. They will apply to Tracon if that entity is placed in control of Coral Air.

Foremost among those was the promise that professional management would be brought in to operate Coral Air. This will be enforced in such a manner as to prevent

---

**4.** As of this writing, no decision had been made on the request for a preliminary injunction, although the hearing was in progress. This

decision will attempt to deal with the situation in such a way as to make the result applicable to any party.

Jaffe and Culliton from being involved in these operations if they gain permanent control, and to require Tracon to continue the professional standards of management now operating the airline.

The further promise of payment of creditors from the interline account was made. We will specifically require payments from such account, or a trust account created for that purpose if direct checkwriting is not possible from the interline account.

Provision will also be made to prevent use of the interline fund except for designated purposes, and for the use of Coral Air tickets on an interline basis except for payment in advance in such a manner as would not cause the debit to the interline account to be any greater than the sum received in advance for such ticket.

Provision will also be made for Coral Air to be operated as an entity in its own right. As stated earlier, to use Coral Air as a near "shell" corporation, with actual operations through a management corporation, is not satisfactory. Whoever operates Coral Air as controlling shareholder must be content to operate it as an airline, in full view of the public as well as creditors.

And, finally, we will institute a reporting provision by which we will be able to monitor compliance with court orders, and a subsequent hearing date will be fixed for a status report.

## IV. CONCLUSION

Ordinarily, a Court should not interpose itself so intimately in the post-plan operations of a debtor such as Coral Air. But those persons responsible for the plan have demonstrated that unless this Court takes such steps, the requirements of the plan will continue to be ignored, as they have been in the past. It is because of a faint hope that Coral Air can survive that we have interjected the Court so forcefully into its activities.

If this last effort to save Coral Air is not successful, the next step can only be its liquidation.

## ORDER

THIS MATTER came before the Court on motions of several creditors who were included in a plan of reorganization approved by the Bankruptcy Court on August 6, 1982. They seek conversion of this matter from a reorganization into a liquidation under 11 U.S.C. § 1112(b)(7) and (8). A hearing was held on May 24, 1984. The Court having considered the matter, and having filed its Memorandum Opinion of even date herewith, now therefore it is

ORDERED:

1. THAT a ruling on the motions for conversion is RESERVED.

2. THAT Tracon International, Inc. and Tracon International Airlines, Inc. shall forthwith VOID any transfer of assets of Coral Air, Inc. previously made to either or both of them, and return such assets to Coral Air, Inc.

3. THAT Coral Air, Inc. and its controlling shareholders shall take immediate steps to retain professional management for the operation of Coral Air, Inc. and place such management in position within seven (7) days of the date herein, and report to the Court in writing the names and cirriculum vitae of such management.

4. THAT in the event Tracon International, Inc. is the controlling shareholder, either directly or through a subsidiary, the requirement contained in Paragraph 3 above is waived, to be effective if and when the present director of operations and the comptroller of the airline are no longer involved in management, at which time such requirement must be complied with.

5. THAT in the event Joseph H. Jaffe and Carol Rae Culliton are part of the group of controlling shareholders, they are hereby BARRED from the exercise of any operational authority or from any involvement in the management of Coral Air, Inc., such exclusion to remain in effect so long as the plan of reorganization remains unfulfilled.

6. THAT no payments, whether by dividends, salaries, loans, or interline tickets for which full consideration is not received,

shall be made to any shareholders directly or indirectly, as the case may be, so long as the plan of reorganization remains unfulfilled. This applies to payments in cash or in kind.

7. THAT no Coral Air, Inc. tickets shall be used for interline travel except upon full payment in advance in an amount not less than the debit against Coral Air, Inc. in the interline account for the use of the same ticket.

8. THAT the controlling shareholders and Coral Air, Inc. shall cause to be paid from Account No. 910–2–441772 at Chase Manhattan Bank, Chase Plaza, New York, N.Y., the following sums to the following creditors, in the order shown, on the dates indicated:

(a) *On or before June 1, 1984:*

| | |
|---|---|
| U.S. Internal Revenue Service (to be credited only to the past due debt of Coral Air, Inc. per the written agreement of April 5, 1983.) | $50,000.00 |
| Aviation Associates | 7,500.00 |
| Caribbean Airline Corp. | 2,000.00 |
| Windward Passage Hotel | 1,000.00 |

(b) *On or before July 3, 1984:*

| | |
|---|---|
| U.S. Internal Revenue Service (to be credited on the same basis as the previous payment) | 20,000.00 |
| Coastal Air Transport | 6,000.00 |
| Isherwood, Hunter & Colianni | 3,145.00 |
| Sparky's Inc. | 4,423.00 |
| V.I. Port Authority | 7,500.00 |

Any balance may be used for payments for aircraft now in use.

(c) *On or before August 3, 1984:*

| | |
|---|---|
| U.S. Internal Revenue Service (to be credited on the same basis as the previous payment) | 20,000.00 |

Any balance may be used for payments for aircraft now in use.

(d) *On or before September 4, 1984:*

| | |
|---|---|
| U.S. Internal Revenue Service (to be credited on the same basis as the previous payment) ***plus accrued interest. | 14,000.00*** |
| Class FIVE creditors (proportionately) | 5,000.00 |
| Aviation Associates | 7,500.00 |
| Caribbean Airline Corp. (and such other sums as to bring this Class THREE current in payments) | 1,000.00 |

9. In the event the sums credited to the account in a certain month are not sufficient to meet the obligations as ordered, the creditor not paid in a particular month shall be the first creditor paid in the succeeding month.

10. THAT in the event the Chase Manhattan Bank interline account cannot be directly used for payments to creditors, a trust account will be created by Coral Air, Inc. with a bank in the U.S. Virgin Islands into which such interline account funds will be promptly deposited, and the payments ordered made from such fund.

11. The controlling shareholders and Coral Air, Inc. shall report to this Court at 8:45 a.m. Wednesday, August 8, 1984, on the status of matters as to compliance with this order, and such other matters as the Court may direct.