In re 12TH & N JOINT VENTURE, Debtor.

Bankruptcy No. 83–00431.

United States Bankruptcy Court, District of Columbia.

May 19, 1986.

Glenn S. Gerstell, Milbank, Tweed, Hadley & McCloy, Washington, D.C., for debtor.

William J. Conti, Shea & Gould, Washington, D.C., for Crossland Sav. Bank, FSB.

## OPINION AND ORDER

GEORGE FRANCIS BASON, Jr., Bankruptcy Judge.

Crossland Savings Bank, FSB ("Crossland") having moved this Court pursuant to Section 362(d) of the United States Bankruptcy Code, 11 U.S.C. § 362(d), for an Order seeking to terminate the automatic stay imposed pursuant to Section 362(a) of the Bankruptcy Code, and for conversion to Chapter 7 pursuant to Section 1112 of the United States Bankruptcy Code, 11 U.S.C. § 1112, and for relief under the confirmed Plan of Reorganization to permit it to foreclose its security interest on certain property known as the Mondrian Condominium, which is located at 1200 N Street, N.W., Washington, D.C., and upon consideration of all the matters raised in Crossland's Motion, and the opposition of Debtor, 12th & N Joint Venture ("12th & N") thereto, including all affidavits submitted in support of and in opposition to the Motion, and the evidence adduced at the hearing held before this Court on April 21, 1986, this Court hereby states its findings of fact and conclusions of law as follows:

1. *Crossland's Request That This Chapter 11 Case Be Converted To A Chapter 7 Liquidation.*

 The Debtor in this case has not complied with the provisions of the confirmed Plan of Reorganization. Such noncompliance is a ground for conversion of a Chapter 11 case into a Chapter 7 liquidation or for dismissal, pursuant to 11 U.S.C. § 1112(a)(2) (1982). However, the record in this case and the complaint in the adversary proceeding initiated by 12th & N indicate a reasonable probability that the Debtor's noncompliance may have been caused by other parties. The adversary complaint

indicates that Debtor's noncompliance may have been occasioned wholly by other parties' failure to comply with contractual commitments, including the moving party here, rather than any delinquency by Debtor. If the moving party is partly responsible for the default, it is, under basic contract principles, estopped to rely on a default for which it is partly responsible.

Moreover, as provided by 11 U.S.C. § 1141(a), "the provisions of a confirmed plan bind the debtor ... and any creditors...." Section 1142(b) authorizes the Court to "direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of a lien, that is necessary for the consummation of the plan." Therefore, under appropriate circumstances, the Court can order various parties to do what must be done to effectuate a confirmed plan.

 Here, the Debtor is in default under the Plan but, as cases cited by Debtor state, that is not necessarily a condition that preordains conversion. Conversion is an "extreme step" and should be exercised "only when a Court is satisfied that no fruitful avenue remains, other than liquidation." *In re Coral Air*, 40 B.R. 979, 982 (D.V.I.1984).

 This Court is convinced that there are other "fruitful avenues". These have been described by David Clark in his testimony, testimony that the Court finds credible after reviewing the demeanor of the witness. The testimony indicates that compliance with the Plan of Reorganization may be possible after only a short delay. Thus, Crossland's motion to convert the Chapter 11 case to a Chapter 7 liquidation is denied.

### 2. *Crossland's Request for Relief From The Automatic Stay.*

 The Court is persuaded by its review of the Bankruptcy Code and *In re Ernst*, 45 B.R. 700, 12 B.C.D. 893 (D.Minn.

1985), that the automatic stay pursuant to § 362 does, by the terms of § 362(c)(1), cease to operate upon confirmation of a plan. *See* 11 U.S.C. § 1141(b). Section § 362(c) provides that the stay of an act against property of the estate continues until the property is no longer the property of the estate. Confirmation vests property of estate in the debtor, 11 U.S.C. § 1141(b), and the automatic stay is thus terminated.

 This does not end the inquiry, however, because confirmation of a plan binds all parties involved with the plan. The confirmed Plan in this case expressly provides that

the Bankruptcy Court shall retain exclusive jurisdiction of these proceedings for the following purposes:

. . . . .

(c) to determine any and all controversies and disputes arising between Debtor and holders of Claims under or in connection with the Plan and such other matters respecting Debtor and holders of Claims as may be provided for in the Order of Confirmation;

(d) to effectuate payments and performance by Debtor under the provisions of the Plan on or before the Final Distribution Date, ....

These provisions mean that this Court has exclusive jurisdiction over this matter. To the extent that *In re Ernst* holds to the contrary, this Court disagrees. A footnote in the *Ernst* case quotes from the *Ernst* plan of reorganization; it appears that the analogous provision concerning retention of jurisdiction by the Bankruptcy Court did not use the phrase "exclusive jurisdiction." 45 B.R. 700, 12 B.C.D. at 894 n. 2. The *Ernst* court held that the provision, because it did not expressly vest exclusive jurisdiction in the Bankruptcy Court, should not be read to do so and thus deny a creditor his state court remedies. In this case, however, the retained jurisdiction is explicitly "exclusive".

Also, unlike the situation in Minnesota, which was the site of the property involved in *Ernst*, foreclosures on real property in

the District of Columbia are accomplished without the necessity for a judicial proceeding; debtors in the District of Columbia thus do not have the judicial protection they have in many other states, including Minnesota. This Court is reluctant to adopt an interpretation that would permit foreclosure without any judicial process, where there is a Chapter 11 confirmed plan containing the above-quoted language.

Finally, *Ernst* is factually distinguishable from the case at hand. In *Ernst*, the debtors had no substantial likelihood of modifying the plan or of extending performance. The Court had been skeptical of the plan's likelihood of success even at the time the plan was confirmed. In this case, at least at this point, the Court believes Debtor's testimony to the effect that, with a relatively brief extension of time for performance, Debtor will be able to comply with the confirmed Plan.

The Court believes further proceedings are justified. The Court will treat Crossland's motion for relief from the automatic stay as a motion to compel performance with the Plan, 11 U.S.C. § 1141(a), and as seeking leave to foreclose upon Debtor's default or noncompliance with a confirmed Plan. In so far as the motion seeks a deed in lieu of foreclosure, it is denied for two reasons.

First, the Court is persuaded by Debtor's argument that the deed-in-lieu provision became operative only if the TCF loan closed and Debtor thereafter became unable to comply with the Plan's terms. Second, the Court believes that Debtor should have a reasonable opportunity to comply with the Plan or seek to amend the Plan. The Court will afford the Debtor that opportunity.

With respect to leave to foreclose for default under the Plan, the issue at this juncture is not whatever injury Crossland may have suffered in the past. The issue is whether there is any difference between Crossland's position now and its position at the time the Plan, to which Crossland agreed, was confirmed. *See* 11 U.S.C. § 1142. At this juncture, Crossland has suffered a loss of $1 million that was due

under the Plan on November 20, 1985. Very shortly, Crossland may suffer a loss of $6.5 million, which it would have expected to receive by May 4, 1986.

Crossland has advanced the theory that it is not adequately protected because of "lost opportunity costs." In *In re Ramco Well Service*, 32 B.R. 525 (Bankr.W.D. Okla.1983), cited by Debtor, that court adopted the position that so long as value of collateral is not declining, Debtor need do nothing to provide adequate protection. Subsequent to *Ramco*, however, are the Ninth Circuit's decision in *In re American Mariner Industries, Inc.*, 734 F.2d 426 (9th Cir.1984), and the Eighth Circuit's decision in *In re Briggs Transportation Co.*, 780 F.2d 1339 (8th Cir.1985). *Briggs* interprets *American Mariner* as authorizing, but not compelling, a bankruptcy court to treat lost opportunity costs as part of adequate protection and as permitting a great deal of flexibility. Debtor should have an opportunity to cure the default, and the Court believes that the period of time specified in this Order should provide a means of assuring continued progress.

The Court believes that during this interim period and for the next 45 days from the April 21 hearing date, at least, adequate protection is provided to Crossland by (1) Crossland's F.D.I.C. guarantee, (2) the increase and stability in the value of the collateral testified to by Debtor's witnesses, and (3) the substantial prospect that Debtor will be able to cure the default within a reasonable period of time.

Based on the foregoing, it is hereby ORDERED that Crossland's motion herein is denied and that a stay against foreclosure shall continue in effect pending further order of this Court; and

It is FURTHER ORDERED that the Debtor will be required to file with this Court and serve upon Crossland a report detailing the progress made with respect to securing alternative financing and describing any facts or developments material to the possibility of reorganization. This report shall be filed with this Court and

**40**

served on the attorney for Crossland no later than June 3, 1986; and

It is FURTHER ORDERED that a hearing be held on June 5, 1986 at 3:00 p.m. to review the progress Debtor has made towards consummating the Plan of Reorganization; and

It is FURTHER ORDERED that a copy of this order shall be served on William J. Conti, Shea & Gould, 1627 K Street, N.W., Washington, D.C. 20006, Attorney for Crossland Savings Bank, FSB, and upon Glenn S. Gerstell, Milbank, Tweed, Hadley & McCloy, 1825 Eye Street, N.W., Washington, D.C. 20006, Attorney for the Debtor.