**In re William Stephen BOWEN, Jr., Debtor.**

**William Steven BOWEN, Jr., Plaintiff,**

**v.**

**UNITED STATES of America, DEPARTMENT OF TREASURY, INTERNAL REVENUE SERVICE, Defendants.**

Bankruptcy No. 92–50010.
Adv. No. 93–05033A.

United States Bankruptcy Court,
S.D. Georgia,
Waycross Division.

Oct. 4, 1994.

---

Wesley J. Boyer, Macon, GA, for debtor.

James B. Thompson, Jr., Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, for I.R.S.

## MEMORANDUM OPINION

JAMES D. WALKER, Jr., Bankruptcy Judge.

This matter is before the Court on cross motions for summary judgment filed by William Stephen Bowen ("Debtor") and the Internal Revenue Service ("IRS"). At issue is the res judicata effect of a confirmed plan of reorganization, the ability of a debtor under Chapter 11 to "strip down" the liens of a creditor to the value of the property pursuant to 11 U.S.C. § 506, and the ability of a debtor to offset individual tax liabilities against a refund allegedly due to a closely held corporation. This is a core matter pursuant to 28 U.S.C. § 157(b)(2)(K). Based on the evidence presented to the Court, the motions for summary judgment will be sustained in part, and denied in part. These findings of fact and conclusions of law are published in compliance with Fed.R.Bankr.P. 7052.

## FINDINGS OF FACT

The case before the Court was filed under Chapter 11 of the Bankruptcy Code on January 6, 1992. The IRS filed its proof of claim in the amount of One Hundred Fifty–Nine Thousand Five Hundred Twenty–Five Dollars and Two Cents ($159,525.02). It contends that its secured claim is Ninety–Five Thousand Fifty–One Dollars and Eighty Cents ($95,051.80), its priority claim is Fifty–Three Thousand Three Hundred Sixty–Four Dollars and Thirty–Seven Cents ($53,364.37), and its unsecured claim is Eleven Thousand One Hundred Eight Dollars and Eighty–Five Cents ($11,108.85).

The IRS is classified as a class 3 claimant in both Debtor's Disclosure Statement and Plan of Reorganization. Debtor's Disclosure Statement provides:

> Class 3 consists of tax obligations owed to governmental units as of the petition date. If any such claims are allowed, they shall be paid over a six year period from the date they were assessed or returned together with interest at approximately nine percent per annum as provided in the plan. The Debtor's schedules and the claims on file in this case indicate that total claims in this class will be $285,157.00. $159,525.00 of this amount is in dispute. A list of such claimants is attached hereto as Exhibit "A". The quarterly debt service on these claims will be approximately $18,000.00, to the extent the claims are allowed.

The Disclosure Statement further provides that the assets to which the IRS liens attach are fully encumbered by senior liens of Bank South in the amount of Seven Hundred Thirty–Three Thousand Seven Hundred Sixty–Six Dollars ($733,766.00) and Farmers and Merchants Bank in the amount of over Two Million Dollars ($2,000,000.00). The Disclosure Statement was approved and the value of Debtor's assets established by order of the Court entered August 4, 1993.

Debtor filed his Plan of Reorganization on December 24, 1992, and an amendment on May 13, 1993. The amended Plan was confirmed by the Court on September 22, 1993.

The IRS did not object to the Plan of Reorganization.

Paragraph 10.6 of the confirmed Plan provides:

> The order confirming this plan shall constitute a judgment avoiding any lien, consensual or otherwise, whether by way of security deed, trust deed, mortgage, security agreement, judgment, operation of statute, or otherwise ("lien") to the extent that the lien does not attach to the value in the debtor's property, as such value is set forth herein or otherwise determined by the Court above prior liens provided for in this plan, and shall also avoid any lien to the extent the claim underlying such lien is not an allowed claim. Confirmation of this plan shall void all judgments filed against the debtor and that the holders of these judgments must execute releases of their judgments, which releases be prepared and submitted at the debtor's expense.

Debtor is the sole shareholder and chief operating officer of Bowen Commercial Construction Corporation ("BCCC"), and files Form 941 tax returns with respect to the employees of BCCC. Debtor contends that he is entitled to refunds for overpayments of Form 941 taxes due to BCCC for each of the four quarters in the years 1985 and 1986. It is undisputed that Debtor did not file an administrative claim for refund within three years of the filing date for any of the quarterly returns due for the 1985 and 1986 tax years. The last date that a payment was applied to the 1985 and 1986 tax liabilities was in April of 1987. No claim for refund was filed within the two years following such payment.

The cross motions for summary judgment now before the Court arise within the context of an adversary proceeding filed by Debtor in an attempt to object to the IRS claim, to assert a counterclaim for setoff, to enforce those portions of the Plan of Reorganization which strip down the IRS lien to the value of the property, and to force the IRS to release its liens. The IRS contends that this Court is without "jurisdiction"[1] to enter an order

---

1. The Court plainly has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Constru-

ing the IRS's motion for summary judgment broadly, the Court will treat the IRS's challenge

which strips the value of federal tax liens relying on the United States Supreme Court's decision in the case of *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), and that Debtor is not entitled to setoff any refunds allegedly due to BCCC against Debtor's individual tax liabilities.

## CONCLUSIONS OF LAW

Summary judgment is appropriate when there is no actual dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Combs v. King*, 764 F.2d 818 (11th Cir.1985). If a genuine issue of fact is in dispute, summary judgment must be denied. *Warrior Tombigbee Transportation Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294 (11th Cir.1983). The moving party may obtain summary judgment by showing that an essential element of the non-moving party's case is lacking. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party must then come forward with sufficient proof to establish the existence of an essential element of its claim. If it cannot, summary judgment must be granted. *Id.* at 322–323, 106 S.Ct. at 2552–53.

## PART I.

■ The res judicata effect of an order confirming a plan of reorganization is contained in both common law notions of res judicata and the Bankruptcy Code at 11 U.S.C. § 1141(a). Section 1141(a) of the Bankruptcy Code provides:

(a) Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity

security holder, or general partner has accepted the plan.[2]

11 U.S.C. § 1141(a) (Law.Co-op.1994).

Black's Law Dictionary defines the common law doctrine of res judicata as follows:

Res Judicata. A matter adjudicated; a thing judicially acted upon or decided; a thing or matter settled by judgment. Rule that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and as to them, constitutes an absolute bar to a subsequent claim, demand or cause of action. [citation omitted]. And to be applicable, requires identity in thing sued for as well as identity of cause of action, of persons and parties to action, and of quality in persons for or against whom claim is made. The sum and substance of the whole rule is that a matter once decided is finally decided. [citations omitted].

Black's Law Dictionary (6th ed. 1990).

A brief overview of the interplay between notions of res judicata and the binding effect of a confirmed plan is contained in Collier on Bankruptcy and provides a good background for this review of applicable case law.

Collier states in pertinent part:

Section 1141(a) of the Code has the same effect as Sections 224(1), 367(1) and 473(1) of the Bankruptcy Act in that a plan is binding upon all parties once it is confirmed and all questions which could have been raised pertaining to such plan are res judicata.... Subject to compliance with the requirements of due process under the Fifth Amendment, a confirmed plan of reorganization is binding upon every entity that holds a claim or interest even though a holder of a claim or interest is not scheduled, has not filed a claim, does not receive a distribution under the plan, or is not entitled to retain an interest under such plan....

Unlike Chapter X of the Bankruptcy Act, there is no "final decree" in a Chapter

---

as one to the power or authority of this Court to confirm a Chapter 11 plan of reorganization which provides for the stripping of federal tax liens.

**2.** Subsections (d)(2) and (d)(3) are not relevant to the instant case. The legislative history to subsection 1141(a) does little more than restate the language used in the Code.

11 case and a final order of confirmation terminates all rights of holders of claims and interests except as otherwise provided for in the plan or the order confirming the plan, subject to revocation of the order of confirmation pursuant to section 1144.

The binding effect of the plan may be compared in result with entry of an order of adjudication under the Bankruptcy Act and an order of relief in a chapter 7 case under the Code. Such an order is a judgment in rem, a determination of the debtor's status as a bankrupt or chapter 7 debtor, as the case may be, and is binding on all parties in interest, whether or not they have appeared to contest entry of the order. Similarly, an order confirming a plan is a judgment in rem in the sense that it is a determination of the rights and liabilities created by the plan binding upon all parties in interest, whether or not they have appeared in the case.

The scope of the doctrine of res judicata in the context of a reorganization plan is best illustrated by the Supreme Court's decision in *Stoll v. Gottlieb....* The Court did not express an opinion as to whether the bankruptcy court had jurisdiction to release the guarantor's obligation, in the first instance, but supported the conclusiveness of the order approving the plan, even after assuming that the lower court did not have jurisdiction of the subject matter of the order (ie. the release in the reorganization case of a guarantor in respect of its guarantee of the debtor's obligations)....

Thus, in the absence of an allegation of fraud in obtaining the judgment, the Supreme Court held that the doctrine of res judicata applied with respect to matters which are covered by a plan of reorganization confirmed by final order of a bankruptcy court.

5 L. King, Collier on Bankruptcy, ¶ 1141.01, 1141-4—1141-9 (15th ed. 1993).

As indicated in Collier, the genesis of the law in this area is in both the former Bankruptcy Act and the case of *Stoll v. Gottlieb*, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938). Also as indicated in Collier, there have been few changes, none of them substantive, between the treatment afforded a confirmed plan in the Bankruptcy Act and the present Code.

The Supreme Court established the res judicata effect of a confirmed plan when it stated:

Every court in rendering judgment tacitly, if not expressly, determines its jurisdiction over the parties and the subject matter. An erroneous affirmative conclusion as to the jurisdiction does not in any proper sense enlarge the jurisdiction of the court until passed upon by the court of last resort, and even then the jurisdiction becomes enlarged only from the necessity of having a judicial determination of the jurisdiction over the subject matter. When an erroneous judgment, whether from the court of first instance or from the court of final resort, is pleaded in another court or another jurisdiction the question is whether the former judgment is res judicata. After a Federal court has decided the question of the jurisdiction over the parties as a contested issue, the court in which the plea of res judicata is made has not the power to inquire again into that jurisdictional fact. We see no reason why a court in the absence of an allegation of fraud in obtaining the judgment, should examine again the question whether the court making the earlier determination on an actual contest over jurisdiction between the parties, did have jurisdiction of the subject matter of the litigation.

*Stoll v. Gottlieb*, 305 U.S. at 171–72, 59 S.Ct. at 137–38. [3]

According to the Supreme Court, all issues regarding a plan of reorganization are re-

**3.** The Supreme Court has both affirmed and limited the holding of *Stoll v. Gottlieb* in a recent opinion. In *Hollywell Corp. v. Smith,* —— U.S. ——, 112 S.Ct. 1021, 117 L.Ed.2d 196 (1992) the Court stated that while a confirmed plan binds all creditors with preconfirmation claims, a plan could not bind creditors with postconfirmation claims. Therefore, the trustee of the estate was forced to make tax returns as the assignee of the property of the estate in trust despite the fact that the plan was silent about the payment of estate income tax. The binding effect of a plan has accordingly been limited to preconfirmation claims.

solved, either explicitly or implicitly, by entry of the order of confirmation. *Id.* Following *Stoll*, courts have drawn upon the binding res judicata effect of a confirmed plan in a variety of contexts and in response to allegations of both procedural and substantive errors made by the court confirming the plan. There is a wealth of authority on this issue, with little disagreement among the circuits.

■ In the case of *American Surety Co. of New York v. Coral Gables First National Bank (Matter of Constructors of Florida, Inc.)*, 349 F.2d 595 (5th Cir.1965) the Fifth Circuit[4] held that where a plan of reorganization left the determination of the validity of a bank's lien up to state court action, and the bank did not appeal the order confirming the plan or object to the plan, the bank was bound by the terms of the plan. *Id.* at 601. In doing so, the court identified the two main rules contained in the doctrine of res judicata:

(1) The final judgment or decree of a court of competent jurisdiction upon the merits concludes the parties and their privies to the litigation, and constitutes a bar to a new action or suit upon the same cause of action *either before the same or any other tribunal.*[5]

(2) Any right, fact or matter in issue and directly adjudicated, or necessarily involved in the determination of an action before a competent court in which a judgment or decree has been rendered upon the merits, is conclusively settled by the judgment therein and cannot again be litigated between the same parties and their privies, whether the claim, demand, purpose or subject-matter of the two suits is the same or not.

The principle of the first rule is referred to as 'bar by former judgment,' and the second as 'conclusiveness of judgment.'

*Id.* at 599–600 (emphasis added).

An order confirming a plan of reorganization possesses all the requisite elements of common law res judicata. *Id.* Thus, the Fifth Circuit has determined as early as 1965 that the doctrine of res judicata applies to all claims dealt with in a confirmed plan of reorganization. *See also NCL Corp. v. Lone Star Building Centers (Eastern) Inc.*, 144 B.R. 170 (S.D.Fla.1992); *Nordberg v. Arab Banking Corp. (In re Chase & Sanborn Corp.)*, 127 B.R. 903 (Bankr.S.D.Fla.1991).

The Fifth Circuit elaborated upon the res judicata effect of a confirmed plan of reorganization in the case of *Miller v. Meinhard–*

**4.** All decisions of the former Fifth Circuit handed down prior to October 1, 1981, are binding upon courts in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

**5.** There is some disagreement on the issue of whether res judicata applies to challenges brought before the court which confirmed the plan. The Fifth Circuit, binding on this Court, seems to say that res judicata applies to claims already adjudicated wherever they may be brought. *Constructors* at 599–600. However, some courts hold that res judicata only applies to challenges other than appeals brought before courts other than the court originally rendering the decision. *See Bill Roderick Distributing, Inc. v. A.J. Mackay Co. (In re A.J. Mackay Co.)*, 50 B.R. 756 (D.Utah 1985); *Broadcast Capital, Inc. v. Davis Broadcasting, Inc. (In re Davis Broadcasting, Inc.)*, 169 B.R. 229 (Bankr.M.D. Ga.1994), *rev'd on other grounds, In re Davis Broadcasting, Inc.*, No. 94–42–COL, slip op. at 2 (M.D.Ga. Aug. 1, 1994). The rationale for this holding is that challenges brought before the court confirming the plan are direct attacks, whereas challenges brought before another court are collateral attacks. This rationale does not take into account the language used in *Construc-*

*tors* stating that res judicata applies to actions brought before the court confirming the plan or any other court, and is belied by the definition assigned to "collateral attacks" which was provided by the Fifth Circuit in *Miller v. Meinhard–Commercial Corp.*, 462 F.2d 358 (5th Cir.1972). In *Miller*, the court stated that "[e]ven though an action has an independent purpose and contemplates some other relief, it is a collateral attack if it must in some fashion overrule a previous judgment.... The suit obviously turns upon what could or should have happened in the bankruptcy proceeding. It is specious to argue that Miller's action in fraud is unrelated or only coincidentally related to the merits of the bankruptcy proceeding." *Miller* at 360. While res judicata does indeed apply in the context of collateral attacks on an order confirming a plan, the definition of what constitutes a collateral attack in this circuit is much broader than that afforded by the courts in *Davis Broadcasting* and *A.J. Mackay*. Direct attacks, on the other hand, should be characterized as attacks which seek relief from the order confirming the plan pursuant to those provisions of the Bankruptcy Code and Rules allowing such relief.

*Commercial Corp.*, 462 F.2d 358 (5th Cir. 1972). In *Miller* an unsecured creditor brought an action after confirmation of the plan against a secured creditor alleging fraudulent representations at the creditor's meeting. The court held that the doctrine of res judicata applied to the unsecured creditor's claims, and affirmed the dismissal of the action.

The court in *Miller* noted that although the unsecured creditor did not accept the plan, it did have notice of the proceedings and participated in them. *Id.* at 360. The court stated:

> An arrangement confirmed by a bankruptcy court has the effect of a judgment rendered by a district court, [citing *Stoll v. Gottlieb* ], and any attempt by the parties or those in privity with them to relitigate any of the matters that were raised or could have been raised therein is barred under the doctrine res judicata. [citations omitted].

*Id.* at 360; *Reese v. AKAI America Limited*, 19 B.R. 83 (S.D.Fla.1982).

■ The IRS contends that the provisions of Debtor's Plan calling for lien stripping are contrary to the Supreme Court's holding in *Dewsnup v. Timm*. The binding effect of a confirmed plan of reorganization is such that res judicata applies even when the plan contains provisions which are arguably contrary to applicable law. Consequently, challenges to a confirmed plan of reorganization which allege that the plan is contrary to applicable law, either bankruptcy or otherwise, are bound to be unsuccessful.

In *Republic Supply Co. v. Shoaf*, 815 F.2d 1046 (5th Cir.1987) the creditor attempted to pursue the debtor's guarantors despite provisions of a plan which released the guarantors of liability. The creditor argued that because that provision of the plan was contrary to applicable law, the court should interpret the plan to delete the offending provisions. Addressing these contentions, the court stated:

> Regardless of whether that provision [of the plan] is inconsistent with the bankruptcy laws or within the authority of the bankruptcy court, it is nonetheless included in the Plan, which was confirmed by the bankruptcy court without objection and was not appealed. Republic, in effect, is now seeking to appeal the confirmed Plan and asking us to review it on its merits. Questions of the propriety or legality of the bankruptcy court confirmation order are indeed properly addressable on direct appeal. Republic, however, is now foreclosed from that avenue of review because it chose not to pursue it. The issue before us in this appeal is the application, not the interpretation, of the Plan.

*Republic Supply* at 1050.

■ Therefore, the contents of a plan of reorganization may not be challenged on the grounds that the plan's provisions are contrary to applicable law absent an appeal. *Laing v. Johnson (In re Laing)*, 31 F.3d 1050 (10th Cir.1994) (stipulation of nondischargeability of debt made in a confirmed Chapter 11 plan could not be relitigated upon conversion of case to Chapter 7); *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544 (11th Cir.1990), *cert. denied*, 498 U.S. 959, 111 S.Ct. 387, 112 L.Ed.2d 398 (1990) (order confirming a plan of reorganization is entitled to preclusive effect on all claims or issues which were raised or could have been raised in the confirmation proceedings); *Howe v. Vaughn (In re Howe)*, 913 F.2d 1138 (5th Cir.1990) (debtors could have brought lender liability claims in a previous bankruptcy case which concluded in a confirmed plan, so res judicata applied to bar claims after confirmation); *North Alabama Anesthesiology Group, P.C. v. Zickler (In re North Alabama Anesthesiology Group, P.C.)*, 154 B.R. 752 (N.D.Ala.1993) (plan releasing nondebtor guarantors was binding on creditors as res judicata); *Martin v. United States (In re Martin)*, 150 B.R. 43 (Bankr. S.D.Cal.1993) (IRS bound by debt collection procedures of plan even though debt was nondischargeable); *In re Moussa*, 95 B.R. 449 (Bankr.N.D.Tex.1989) (provisions of plan preempts time limits of Fed.R.Bankr.P. 4004(a)); *Wayne H. Coloney Co., Inc. v. United States (In re Wayne H. Coloney Co., Inc.)*, 89 B.R. 924 (Bankr.N.D.Fla.1988) (although debtor cannot normally sever and assume part of a contract and reject the remainder, if the confirmed plan so provides,

res judicata precludes challenge); *City National Bank of Miami v. General Coffee Corp. (In re General Coffee Corp.)*, 85 B.R. 905 (Bankr.S.D.Fla.1988) (questions of court's authority to enter confirmation order is res judicata); *In re 12th & N Joint Venture*, 63 B.R. 36 (Bankr.D.D.C.1986) (jurisdictional provisions of a plan preempts termination of the automatic stay); *In re St. Louis Freight Lines, Inc.*, 45 B.R. 546 (Bankr. E.D.Mich.1984) (plan is binding on creditors receiving less under the plan than legally entitled to); *But see Union Carbide Corp. v. Newboles*, 686 F.2d 593 (7th Cir.1982) (court did not have authority to discharge guarantors of obligations despite provision in plan; res judicata was not discussed in the opinion); *In re Davis Broadcasting, Inc.*, No. 94–42–COL, slip op. at 2 (M.D.Ga. Aug. 1, 1994) (same).

Accordingly, both applicable provisions of the Bankruptcy Code and Rules, and case law precedent provide that orders confirming plans of reorganization are binding on all claims which were, or could have been, raised at the confirmation hearing.[6]

The grounds by which a confirmed plan may be attacked other than by direct appeal are provided for in the Code and Rules. Under section 1144 of the Bankruptcy Code, orders confirming a plan of reorganization can only be revoked if the order was procured by fraud.[7] Pursuant to Fed. R.Bankr.P. 9024,[8] Rule 60 of the Federal Rules of Civil Procedure applies to cases under Title 11. Under Rule 60(b),[9] relief from an order can be obtained for (1) mistake; (2) newly discovered evidence; (3) fraud; (4) the judgment is void; (5) the judgment has been satisfied, precedent reversed, or equities prevent prospective application; (6) any other reason justifying relief from judgment. Rule 60(b) gives the bankruptcy court authority to review an order of confirmation under those grounds. *Southmark Properties v. Charles House Corp.*, 742 F.2d 862 (5th Cir.1984) (final judgments, even if incorrect, are not open to collateral attack, but relief is available for fraud, mistake, etc.); *In re Rankin*, 141 B.R. 315 (Bankr.W.D.Tex.1992); *United States v. Poteet Construction Co., Inc. (In re Poteet Construction Co., Inc.)*, 122 B.R. 616 (Bankr. S.D.Ga.1990).[10]

---

**6.** The result is the same in the context of confirmed Chapter 13 plans. *In re Eason*, No. 91–70109, 1994 WL 582522, slip op. at 9 (Bankr. M.D.Ga. Aug. 2, 1994); *Matter of Battle*, 164 B.R. 394 (Bankr.M.D.Ga.1994); *In re Duke*, 153 B.R. 913 (Bankr.N.D.Ala.1993).

**7.** Section 1144 of the Bankruptcy Code provides: On request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order if and only if such order was procured by fraud. An order under this section revoking an order of confirmation shall—
 (1) contain such provisions as are necessary to protect any entity acquiring rights in good faith reliance on the order of confirmation; and
 (2) revoke the discharge of the debtor.
11 U.S.C. § 1144 (Law.Co-op.1994).

**8.** "Rule 60 F.R.Civ.P. applies in cases under the Code except that ... (3) a complaint to revoke an order confirming a plan may be filed only within the time allowed by § 1144, § 1230, or § 1330." Fed.R.Bankr.P. 9024 (Law.Co-op.1994).

**9.** Rule 60(b) provides:
 (b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct or an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment....
F.R.Civ.P. 60(b) (Law.Co-op.1994).

**10.** Additional grounds are suggested in *In re Moseley*, 74 B.R. 791 (Bankr.C.D.Cal.1987). The *Moseley* court suggests that plans may be attacked by "(1) appeal of the confirmation order; (2) motion to alter or amend the order, including a motion for reconsideration or for rehearing; (3) motion to dismiss the case; (4) motion to correct a clerical mistake; (5) adversary proceeding to revoke confirmation; (6) motion to set aside the confirmation on due process grounds; (7) motion to modify the Chapter 13 plan." *Id.* at 798.

Taking the *Stoll, Constructors,* and *Miller* cases together, res judicata applies to actions on claims dealt with in the plan brought before the court confirming the plan or any other court if the action must in some fashion overrule the order confirming the plan of reorganization. Direct attacks on an order of confirmation are available only on those grounds provided in the Code and Rules, and under due process notions pursuant to the Fifth Amendment.[11] All other attacks are collateral, and as such, are prevented by res judicata. Creditors wishing to attack provisions of the plan as contrary to applicable law should object to the plan at confirmation. "Having objected timely, it is also incumbent on the objecting creditor if the objection is denied in the bankruptcy court to take a direct appeal of that order of denial. The point is that only a direct attack is available and collateral attack is unavailable." Collier, ¶ 1141.01 at 1141-9 n. 17(a).

Pursuant to the above cited case law, the contents of the Plan of Reorganization are binding on all claims as to both the IRS and Debtor. Debtor's Plan of Reorganization at paragraph 10.6 calls for lien stripping. The IRS does not allege fraud under 11 U.S.C. § 1144 or any other grounds for relief from the order of confirmation under F.R.Civ.P. 60(b). Rather than attempting a direct attack on the confirmed Plan, the IRS attempts to challenge the Plan by a collateral attack on the "jurisdiction" of the Court. Such attacks are barred by res judicata. The only remaining consideration is due process.

Lack of due process may invalidate actions taken to alter the secured status of a creditor where the creditor has received insufficient notice. *See e.g. Southtrust Bank of Alabama v. Thomas (In re Thomas),* 883 F.2d 991 (11th Cir.1989). Due process within the Bankruptcy Code is determined initially by reference to the rules of construction within the Code. Section 102 sets forth the requirement of notice and a hearing as follows:

(1) "after notice and a hearing", or a similar phrase-

(A) means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances; but

(B) authorizes an act without actual hearing if such notice is given properly and if—

(i) such a hearing is not requested timely by a party in interest; or

(ii) there is insufficient time for a hearing to be commenced before such act must be done, and the court authorizes such act;

11 U.S.C. § 102(1) (Law.Co-op.1994).

The phrase "notice and a hearing" is a flexible concept within the Code, and requires only "such notice as is appropriate in the particular circumstances ...". 11 U.S.C. § 102(1); *Matter of Pence,* 905 F.2d 1107, 1109 (7th Cir.1990) ("Due process does not always require formal, written notice of court proceedings; informal actual notice will suffice.").

The general rule regarding notice and due process was summarized by the court in the case of *In re Moseley,* 74 B.R. 791 (Bankr. C.D.Cal.1987) as follows:

The notice requirement has two elements. First, the notice must be given in such a manner that it is reasonably calculated to reach its intended audience. Second, the content of the notice must reasonably inform the recipient of the nature of the upcoming proceeding.

*Id.* at 801, citing *Drabkin v. Midland–Ross (In re Autotrain),* 810 F.2d 270, 278 (D.C.Cir.1987).

Expounding upon the issue, the court in *In re Basham,* 167 B.R. 903 (Bankr.W.D.Mo. 1994) stated that the contents of adequate notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 907, citing *Mullane v.*

11. *See In re Auto West, Inc.,* 43 B.R. 761 (C.D.Utah 1984) (plan of reorganization did not prevent debtor from pursuing an undisclosed

chose in action against a creditor who was not treated or mentioned in the plan); *In re Rideout,* 86 B.R. 523 (Bankr.N.D.Ohio 1988).

*Hanover Bank & Trust,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). The court in *Basham* went on to state:

> Looking to the contents of the notice to determine if the notice is reasonably calculated, under the circumstances, to apprise interested parties that their rights may be modified, is a flexible approach that encompasses the totality of the circumstances presented in each case. Such approach allows the Court to consider a creditor's sophistication, the amount of their involvement in the bankruptcy proceeding, as well as, that creditor's reliance on the claims allowance procedures as demonstrated by a proof of claim filed before plan confirmation.

*Basham* at 908.

The general rule regarding notice takes into account the notion that "unless action is taken to avoid a lien, it passes through a bankruptcy proceeding." *Matter of Pence* at 1109, citing *In re Tarnow,* 749 F.2d 464 (7th Cir.1984). In Pence, the court allowed a confirmed plan to void a security interest in the debtor's residence in exchange for other property. In so doing, the court characterized the rule regarding due process and the terms of a confirmed plan as follows:

> In the cases where the courts have allowed a lien to survive bankruptcy proceedings despite provisions in a reorganization plan to the contrary, the plan did not allow for any payment of the secured claim—typically where the secured creditor did not file a proof of claim and the plan provided only for the payment of 'allowed secured claims'. [citation omitted]. It is a very different matter where the plan treats the secured claim in a fair and equitable manner, providing for full payment of the debt.

*Id.* at 1110.

 The res judicata effect of a confirmed plan therefore depends upon whether the claim in question is provided for in the plan. Thus, in the case of *In re Thomas,* the Eleventh Circuit held that the Bankruptcy Code does not extinguish a lien where the secured creditor neglected to file a claim, and the debtor failed to "provide for" the creditor in the confirmed plan. *Id.* at 998. A plan does not "provide for" payment on a debt where no payments are made on the value of a creditor's interest in collateral. *In re Duke,* 153 B.R. at 920. Where a creditor has failed to file a claim, and where the debtor also fails to provide for the claim in the plan of reorganization, due process will prohibit the vesting of the property in the debtor free and clear of the creditor's interest.[12] *Thomas* at 996–99.

 *In re Thomas* is readily distinguishable from the case at bar. Unlike the creditor in *Thomas,* the IRS has filed claims in this case. Also unlike *Thomas,* the IRS is provided for in Debtor's Plan. Debtor has provided for the payment of the IRS's claim as a secured claim to the full extent of the IRS's interest in the estate's interest in the property. In light of the fact that the property was found by the Court to be fully encumbered by senior liens, such secured claim is zero. This does not mean that Debtor will not make payments upon the IRS's claim. Despite the fact that the IRS does not have a secured claim in this case, the IRS's claim will be paid in full under Debtor's Plan as an unsecured claim. Such treatment is fair and equitable in light of the value of the property and the binding effect which Congress intended for a plan of reorganization. The IRS is "provided for" in Debtor's Plan.

The Eleventh Circuit has also discussed due process and the modification of a creditor's claim in the cases of *Foremost Financial Services Corp. v. White (In re White),* 908 F.2d 691 (11th Cir.1990) and *Green Tree Acceptance, Inc. v. Calvert (In re Calvert),* 907 F.2d 1069 (11th Cir.1990). In *White,* the court held that the bankruptcy court could not review a proof of claim sua sponte where no party sought determination of the creditor's secured status, and the creditor was not provided with notice of the court's actions. In *Calvert,* the court held that a notice of

---

**12.** Of central importance to the court's holding in *Thomas* was the fact that under Alabama law, the debtor held only a possessory interest in the property, and the debtor could not improve its position by forcing the release of the lien merely by "passing [their] property through the estate." *Thomas* at 998, quoting *In re Honaker,* 4 B.R. 415, 416–17 (Bankr.E.D.Mich.1980).

confirmation hearing which stated that the court "may" hear evidence on claim valuation did not constitute adequate notice to the creditor that its rights may be altered.

Both *White* and *Calvert* are distinguishable from the case at bar in that they address procedural errors made by the bankruptcy court prior to confirmation which resulted in a denial of due process. In both cases, the bankruptcy court altered the treatment afforded the creditor in the debtor's proposed plan prior to confirmation. In both cases, the bankruptcy courts altered the secured claims without notifying the creditors, and then confirmed the plans without further notice under terms directly tied to those findings. Rather than reviewing the plan, the appellate courts reviewed the procedure preceding confirmation of the plan.

Neither *White* nor *Calvert* addressed the concerns which are before this Court. It is the Plan which dictates the treatment of the IRS claim, not a preconfirmation action taken by the Court without notice. To state that a debtor's plan must provide for a creditor's claim in the same manner as the claim was filed ignores section 1123(b)(1) of the Code, which provides that a plan may "impair or leave unimpaired any class of claims, secured or unsecured, or interests ...". 11 U.S.C. § 1123(b)(1) (Law.Co-op.1994). The only procedure which is relevant, and for which due process is a concern, is that notice required to make the IRS aware of the contents of Debtor's Plan.

In the present case, the IRS had actual notice of the contents of Debtor's Plan. The IRS was on notice of both the valuation of Debtor's property and the senior liens of Bank South and Farmers and Merchants Bank. The IRS was provided with copies of the Disclosure Statement and the Plan which proposed to limit all secured claims to the value of the property. The IRS had notice that all parties would be bound by the terms of the confirmed Plan. Debtor's Plan put the IRS on notice that the confirmation of the Plan would reduce a creditor's security interest to the value of the collateral. The Court finds that the IRS had the opportunity to object to its treatment under Debtor's Chapter 11 Plan at the confirmation hearing. No

such objection was filed. Due process as to the IRS's treatment under the Plan has been satisfied.

Just as the Supreme Court in *Stoll* found that the bankruptcy court implicitly determined it had jurisdiction to release a guarantor, this Court found that the Plan complied with the applicable provisions of Title 11. 11 U.S.C. § 1129(a)(1). In fact, the order confirming Debtor's Plan explicitly states as much. The IRS has not appealed the confirmation order, and the deadline for appeals passed in March of 1994. This Court finds that the IRS is bound by the terms of the confirmed Plan of Reorganization. Debtor's motion for summary judgment pertaining to the "stripped" status of the IRS lien will be sustained. The IRS's motion for summary judgment in this regard will be denied.

Finding that Debtor's Plan provides for lien stripping, and that the IRS is now precluded from challenging those portions of the Plan, does not end this Court's inquiry. Debtor also seeks to obtain an order from this Court directing the IRS to release its liens. Upon review of Debtor's Plan of Reorganization, the Court notes that the Plan is silent as to when the IRS shall release its liens. In order to determine if Debtor is entitled to such an order, the Court must first review applicable portions of the Bankruptcy Code.

Initially, the Court notes that the Bankruptcy Code at section 1141(c) addresses the effect of the order of confirmation upon a creditor's prepetition interests. That portion of the Code provides:

(c) Except as provided in subsections (d)(2) and (d)(3) of this section and except as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor.

11 U.S.C. § 1141(c) (Law.Co-op.1994).

Unless otherwise provided for in the plan, the language of section 1141(c) calls for the voiding of interests on property dealt with under the plan upon confirmation. The interpretation of this Code section has sparked

a debate over whether a lien is an "interest" within the meaning of section 1141(c).[13] The leading case in this jurisdiction addressing this issue is *Relihan v. Exchange Bank,* 69 B.R. 122 (S.D.Ga.1985). In that case, the court found that a lien is not an interest within the meaning of section 1141(c). Rather, in keeping with a long line of cases beginning with the Supreme Court's decision in *Long v. Bullard,* 117 U.S. 617, 6 S.Ct. 917, 29 L.Ed. 1004 (1886), the court found that liens will pass through bankruptcy unaffected unless a party takes affirmative steps to challenge such lien. *Id.* at 126, citing *Matter of Tarnow,* 749 F.2d 464 (7th Cir.1984).

In the matter before this Court, Debtor has taken affirmative steps to reduce the IRS's secured status commensurate with the value of the property and the interests of those creditors with liens senior to the lien asserted by the IRS. However, under the rationale of *Relihan,* a lien is not an interest within the meaning of 11 U.S.C. § 1141(c). Therefore, it must follow that the release of the IRS lien cannot be accomplished pursuant to section 1141(c) of the Bankruptcy Code. Any such release must depend upon the operation of section 506(d) of the Code.

■ Section 506 of the Bankruptcy Code provides the statutory authority for reduction of a creditor's lien commensurate with the value of the property and the bankruptcy estate's interest in the property. Such a procedure has been dubbed "lien stripping" by courts addressing the effect of section 506. Relevant portions of section 506 are as follows:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the

amount so subject to set off is less than the amount of such allowed claim....

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—

(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

11 U.S.C. § 506(a) and (d) (Law.Co-op.1994).

Section 506(a) states that to the extent that a creditor's secured claim is of an amount greater than the value of the property, the creditor's claim is divided into two claims: a secured claim to the extent of the estate's interest in the property, and an unsecured claim for the remainder. Section 506(d) states that to the extent that a lien secures a claim which is not deemed secured by operation of the Code, that lien is void. Lien stripping comes about when a creditor's claim is bifurcated pursuant to section 506(a) into secured and unsecured portions, and the lien securing the claim voided pursuant to section 506(d) to the extent that the lien is in excess of that amount of the claim which is deemed secured.

The Supreme Court in *Dewsnup v. Timm* addressed the issue of whether a debtor may " 'strip down' a creditor's lien on real property to the value of the collateral, as judicially determined, when that value is less than the amount of the claim secured by the lien." *Id.* at ——, 112 S.Ct. at 775. The Court began with the premise that because the parties disagreed about the meaning of section 506, the statute was ambiguous. *Id.* at ——, 112 S.Ct. at 777–78. The Court reasoned that the term "allowed secured claim" as it is used in section 506(d) need not be defined in accordance with section 506(a).

---

13. *See Relihan v. Exchange Bank,* 69 B.R. 122 (S.D.Ga.1985) (where no party takes affirmative steps to avoid a lien, the lien will not be voided by section 1141(c)); *In re Electronics & Metals Industries, Inc.,* 153 B.R. 36 (Bankr.W.D.Tex. 1992) (same); *In re Snedaker,* 39 B.R. 41 (Bankr.

S.D.Fla.1984) (same); *contra In re Penrod,* 169 B.R. 910 (Bankr.N.D.Ind.1994); *In re Henderberg,* 108 B.R. 407 (Bankr.N.D.N.Y.1989); *Minstar v. Plastech Research, Inc. (In re Arctic Enterprises, Inc.),* 68 B.R. 71 (D.Minn.1986).

*Id.* at ——, 112 S.Ct. at 778. The Court identified the pre-Code rule that a "creditor's lien stays with the real property until the foreclosure." *Id.* at ——, 112 S.Ct. at 778. According to the majority opinion, "[a]part from reorganization proceedings [citation omitted] no provision of the pre-Code statute permitted involuntary reduction of the amount of a creditor's lien for any reason other than payment on the debt." *Id.* at ——, 112 S.Ct. at 779. The Court went on to state that since Congress made no explicit statement that it intended to revise pre-Code law, the Court would interpret section 506 in light of such previous law. *Id.* at ——, 112 S.Ct. at 779. The Court concluded that debtors in a Chapter 7 liquidation case cannot strip down a creditor's lien pursuant to section 506 of the Code.

It is important to note that *Dewsnup v. Timm* was a Chapter 7 case. The Court limited its holding and, arguably, its rationale, to the application of section 506 to those cases under Chapter 7 when it stated:

> Hypothetical applications that come to mind and those advanced at oral arguments illustrate the difficulty of interpreting the statute [section 506] in a single opinion that would apply to all possible fact situations. We therefore focus upon the case before us and allow other facts to await their legal resolution on another day.

*Id.* at ——, 112 S.Ct. at 778.

The methodology and analytical premises which lead to the Court's conclusion have been questioned and thoroughly analyzed in the dissenting opinion filed by Justice Scalia as well as by subsequent courts interpreting the seemingly unambiguous statutory language of section 506. *See Dewsnup v. Timm*, —— U.S. at ——, 112 S.Ct. at 779 (Scalia, J., dissenting); *Dever v. Internal Revenue Service (In re Dever)*, 164 B.R. 132 (Bankr.C.D.Cal.1994); *Taffi v. United States (In re Taffi)*, 144 B.R. 105 (Bankr.C.D.Cal. 1992), *rev'd on other grounds Taffi v. United States (In re Taffi)*, 72 A.F.T.R.2d 93–6607, 1993 WL 558844 (C.D.Cal.1993). However, the cow is, so to speak, out of the barn. Courts in the wake of *Dewsnup* are forced to either duplicate a questionable rationale and disregard accepted canons of interpretation, or disregard the rationale in favor of divining the Supreme Court's concerns and giving full force and effect to the laws of Congress. The goal of courts of the United States must be to simultaneously give effect to both the laws of Congress and the concerns which spawned the majority opinion in *Dewsnup v. Timm*.

Courts have split in the wake of *Dewsnup v. Timm* on the issue of whether lien stripping is permissable in a case under Chapter 11. The split is largely the result of the apparent willingness of some courts to accept the Supreme Court's invitation to limit *Dewsnup v. Timm* to cases under Chapter 7. *Id.* at ——, 112 S.Ct. at 777–778. Several courts have refused the invitation. *See Taffi*, 144 B.R. at 113; *In re Blue Pacific Car Wash*, 150 B.R. 434 (W.D.Wis.1993). After all, section 506 applies equally to all chapters of the Bankruptcy Code. 11 U.S.C. § 103(a). As the court in *Taffi* stated:

> Nowhere in *Dewsnup* can I find the conclusion that 506(d) means one thing in chapter 11 and another in chapter 7. It should also be noted that to construe a section of chapter 5 of the Bankruptcy Code to have a different meaning in chapter 7 than it has in chapter 11 would involve the same faulty statutory analysis engaged in by the *Dewsnup* majority and criticized in the *Dewsnup* dissent.

*Taffi* at 114.

Other courts, accepting the Supreme Court's invitation, have opted to discount the majority's rationale in favor of identifying the Court's concerns over lien stripping in liquidation cases, and distinguishing them from reorganization cases. *See Dever* at 137–144.

In this Court's opinion, the *Dever* court most accurately addresses the applicability of *Dewsnup v. Timm* with respect to the provisions of Bankruptcy Code under reorganization cases. Rather than attempting to duplicate the methodology utilized by the Supreme Court, analysis of section 506 in reorganization cases should begin with a recognition of the result the Supreme Court was trying to avoid in *Dewsnup v. Timm*.

The *Dever* court analyzed the *Dewsnup* problem as follows:

This holding appears to have been driven by two factors: (1) as a voluntary lien, the bargained-for result under state law would have been that, if the debtor failed to repay the loan, the lender was entitled to foreclose; and (2) there was no benefit whatever realized for the estate or other creditors from this post-abandonment voiding of the lien. Under the circumstances, the Supreme Court considered unfair an outcome that appeared to place all the risk of a decline in property value on a mortgage lender, and none on the debtor, who would retain the upside potential if the property later appreciates in value. A "windfall," the Court called such a result. . . .

If an undersecured creditor forecloses, one of two things happens: either the creditor is paid in cash the fair market value of the property by a third party purchaser, which in theory should be the equivalent of the collateral value determined by the bankruptcy court; or the creditor buys the property itself by credit-bid if other bids at the sale are not sufficiently attractive to the creditor. The creditor thus has the choice of whether to forego the immediate cash in favor of betting on the property's future appreciation.

What disturbed the Court in *Dewsnup* was the debtor's attempt to create a third alternative in which the creditor neither received the cash value of the property nor the appreciation potential of ownership. The true effect of lien-stripping in Chapter 7 cases is to allow debtors to redeem their property at a discounted value by installment payments over a protracted period—without giving the creditor any choice whatsoever in the matter.

The issue, therefore, is not really how much of the claim is protected by the lien, but rather who has the right to ownership of the asset when it leaves bankruptcy. Under what conditions does the underse-

cured creditor have the right to bid for ownership of the property? Framed in this manner, the unfairness of Chapter 7 lien-stripping lies in its failure to require that the creditor receive the cash value of its collateral as the price for being deprived of its opportunity to credit-bid at a foreclosure sale. But this is not a Section 506 failing. Other provisions of the Code are responsible for providing the checks and balances on lien-stripping.

*Dever* at 135.

The court concluded that without lien stripping both congressional intent and existing portions of the Code would be sacrificed.[14] *Id.* Of particular note is the fact that Congress has provided the mechanism in Chapter 11 in the form of 11 U.S.C. § 1111(b) for undersecured creditors to opt out of the bifurcation of its claims under section 506(a). By making an 1111(b) election, a creditor may be treated as fully secured to the extent of its allowed claim. As the court in *In re 680 Fifth Avenue Assoc.*, 156 B.R. 726 (Bankr.S.D.N.Y.1993) explained:

[t]he fact that the § 1111(b) election exists at all presumes that debtors possess the authority under the Code to limit secured claims to the value of the collateral. The election allows an undersecured creditor to opt out of the lien-stripping found in § 1129 in exchange for relinquishing its deficiency claim, retaining its lien for the full amount of its claim, and receiving payments totalling the entire allowed claim and having a present value equal to the secured amount. . . . [citation omitted]. If on the contrary, the undersecured creditor's lien were preserved under section 1129(b) to the extent the underlying claim were allowed, there would be no reason to offer the undersecured creditor the 1111(b) election. The lien would endure regard-

14. The *Dever* opinion is both insightful and useful in its analysis of lien stripping in reorganization cases. The legislative history of Chapter 12 of the Bankruptcy Code demonstrates that it was created in part to facilitate lien stripping for family farmers. *Id.* at 139–40. Chapter 13 prohibits lien stripping in the case of liens upon a debtor's principal residence. 11 U.S.C.

§ 1322(b)(2). By implication, liens may be stripped if they are not of that variety prohibited under section 1322(b)(2). *Id.* at 141. Although the matter before the Court concerns a Chapter 11 case, the *Dever* court's analysis of lien stripping in Chapters 12 and 13 of the Code would be persuasive in a case under either of those chapters.

less of the creditor's decision, and no "election" would be held at all.

*Id.* at 731 n. 7.

Stated simply, to say that there is no lien stripping in Chapter 11 is to ignore the existence of section 1111(b).

The holding of *Dever* is both comprehensive and correct in this Court's opinion. The *Dewsnup* case stands for the proposition that there can be no lien stripping without payment of the debt which is secured by the lien. The *Dewsnup* problem was that the debtor attempted to strip the creditor's lien without either making payments on the debt or allowing the creditor to purchase the property by credit bid and enjoy the appreciation. *Dewsnup* at ——, 112 S.Ct. at 777–78; *Dever* at 135.

In reorganization cases, the lien stripping is coupled with payments under a plan. In reorganization cases, ownership of the property will vest in the debtor. There is no right to credit-bid which is lost to a lender. Unlike the creditor in *Dewsnup*, creditors in reorganization cases receive something in exchange for the voiding of their liens: payment obligations under a plan of reorganization. If a creditor receives the value of its interest in the property under a plan of reorganization, the principles of *Dewsnup* are not violated and the lien may be stripped.

In the matter before this Court, the IRS's lien was stripped by the order confirming Debtor's Plan of Reorganization. The lien has been voided. Debtor now seeks to obtain an order directing the IRS to release its liens. Nothing in either the Code or case law precedent prevents this Court from ordering a creditor to comply with the terms of the plan and release liens on a debtor's property which have been voided. .

While in cases under Chapter 12 and 13 the deferral of the order of discharge to the end of the plan may lead a court to postpone lien release until the completion of a plan,[15] the discharge in a Chapter 11 case occurs upon confirmation of a plan. 11 U.S.C.

§ 1141(d). The IRS lien was stripped at confirmation, at the same time as Debtor received his discharge. Debtor is therefore entitled to obtain an order requiring the release of the IRS lien. Summary judgment will be entered in favor of Debtor on the issue of the release of the IRS's lien. The IRS's motion for summary judgment in this regard will be denied.[16]

### PART II.

■ The parties have also filed cross motions for summary judgment on the issue of whether Debtor may offset the asserted claim of the IRS against a tax refund allegedly due BCCC. The Court notes initially that Debtor's objection based on the alleged right of setoff is not barred by res judicata because Debtor's Plan preserved its right to challenge the IRS claim on those grounds. However, because the Court finds that the statute of limitations regarding claims for refund of overpayments allegedly made by BCCC has expired, the Court will grant the IRS's motion for summary judgment in this respect.

The statute of limitations for filing claims for refund of tax overpayments is provided in the Internal Revenue Code as follows:

(a) **Period of limitation on filing claim.**—Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid. Claim for credit or refund of an overpayment of any tax imposed by this title which is required to be paid by means of a stamp shall be filed by the taxpayer within 3 years from the time the tax was paid.

---

15. *Nationsbank, Inc. v. Holiday (In re Holiday)*, No. 91–10426, 1993 WL 733165 slip op. at 6–7 (Bankr.S.D.Ga. Mar. 29, 1993).

16. The priority of the IRS claim under 11 U.S.C. § 507 is not an issue in these proceedings. The Court expresses no opinion as to the priority which the IRS claim occupies for the purposes of distribution.

**856**

26 U.S.C.A. § 6511(a) (West 1989 & Supp. 1994).

The filing of a claim for refund of an overpayment within the limitations period of section 6511(a) is the only means the Internal Revenue Code provides for the refund of overpayments. 26 U.S.C.A. § 6511(b)(1) (West 1989 & Supp.1994); *United States v. Dalm*, 494 U.S. 596, 602, 110 S.Ct. 1361, 1365, 108 L.Ed.2d 548 (1990) ("[U]nless a claim for refund of a tax has been filed within the time limits imposed by § 6511(a), a suit for refund ... may not be maintained in any court"). The parties do not dispute that the statute of limitations has expired. This Court finds that Debtor has no remedy available within the Internal Revenue Code.

Debtor claims that under the doctrine of equitable recoupment, the statute of limitations will not prevent an action to recover a time barred refund. Although this is a correct statement of the law, the Court finds that equitable recoupment is not available under the undisputed facts of this case.

■ Equitable recoupment is an exception to the statute of limitations contained in the Internal Revenue Code. Either an assessment for deficiency or claim for refund under equitable recoupment may be brought where the government has taxed the same transaction under two inconsistent theories, and the statute of limitations would prevent an assessment for, or refund of, a time barred taxable event. *Bull v. United States*, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1935); *Stone v. White*, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265 (1937). In the context of a suit for refund, the taxpayer may seek a refund for taxes erroneously paid in a previous assessment when the government attempts to tax the transaction in question a second time under a subsequent inconsistent legal theory. Although equity is at the heart of this doctrine, the Supreme Court in *Rothensies v. Electric Storage Battery Co.*, 329 U.S. 296, 67 S.Ct. 271, 91 L.Ed. 296 (1946) cautioned against an overly broad application of equitable recoupment. The Court stated:

> The essence of the doctrine of recoupment is stated in the *Bull* case; 'Recoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded.' [citation omitted]. It has never been thought to allow one transaction to be offset against another, but only to permit a transaction which is made subject of suit by a plaintiff to be examined in all its aspects, and judgment to be rendered that does justice in view of the one transaction as a whole.

*Rothensies*, 329 U.S. at 299, 67 S.Ct. at 272.

The Court reviewed the limited circumstances in which equitable recoupment is available by reference to both the *Bull* and *Stone* opinions. Justice Jackson, writing for the majority in *Rothensies*, summarized those cases as follows:

> In both cases a single transaction constituted the taxable event claimed upon and the one considered in recoupment. In both, the single transaction or taxable event had been subjected to two taxes on inconsistent legal theories, and what was mistakenly paid was recouped against what was correctly due. In *Bull v. United States*, the one taxable event was receipt by executors of a sum of money. An effort was made to tax it twice—once under the Income Tax Act as income to the estate after decedent's death and once under the Estate Tax Act as part of decedent's gross estate. This Court held that the amount of the tax collected on a wrong theory should be allowed in recoupment against an assessment under the correct theory. [footnote omitted]. In *Stone v. White*, likewise, both the claim and recoupment involved a single taxable event, which was receipt by an estate of income for a period. The trustees had paid the income tax on it but this Court held that it was taxable to the beneficiary. Assessment against the beneficiary had meanwhile become barred. Then the trustees sued for a refund, which would inure to the beneficiary. The Court treated the transaction as a whole and allowed recoupment of the tax which the beneficiary should have paid against the tax the Government should not have collected from the trustees. Whatever may have been said indicating a broader scope to the doctrine of recoupment, these facts are the only ones in which it has been applied by this Court in tax cases.

*Rothensies,* 329 U.S. at 299–300, 67 S.Ct. at 272–73.

█ The Supreme Court has, therefore, limited the doctrine of equitable recoupment to situations in which the government has taxed a single transaction under two inconsistent legal theories. *United States v. Dalm,* 494 U.S. at 604–06, 110 S.Ct. at 1366–67. The crux of the issue is the determination of what constitutes a single transaction or taxable event.

The Court finds persuasive the rationale proposed in the case of *Mann v. United States,* 552 F.Supp. 1132 (N.D.Tex.1982), *aff'd, Mann v. United States,* 731 F.2d 267 (5th Cir.1984). In *Mann,* the district court held that the limitations periods contained in the Internal Revenue Code "would be undermined unless the recoupment claim could be established from proof of the transaction on which the plaintiff's claim for refund is based (as in *Bull* and *Stone* )." *Mann,* 552 F.Supp. at 1141. Under this rationale, a single transaction for the purposes of equitable recoupment could be demonstrated by showing that the evidence necessary to establish the recoupment claim is the same as the evidence necessary to establish the plaintiff's claim. Proof of the same set of operative facts giving rise to the inconsistent liabilities is sufficient to show that equitable recoupment may apply. This test is consistent with the statement of the Supreme Court in *Bull* that recoupment is in the nature of a defense to a claim.

In the matter before this Court, the taxable events for which Debtor seeks to obtain credit against the IRS's claim in this individual bankruptcy case are alleged overpayments made on BCCC's Form 941 tax obligations for the 1985 and 1986 tax years. In order to establish this claim for refund, Debtor would have to present proof of overpayments made by BCCC in each of the taxable periods of 1985 and 1986. The IRS's claim in this bankruptcy case does not seek to assert any tax liabilities for either of those years. Rather, the IRS's claim is based on tax liabilities assessed in the 1989 and 1990 tax years.

Proof of tax liabilities arising in 1989 and 1990 are wholly separate matters from proof of overpayments in 1985 and 1986 which would require separate evidence in order to establish Debtor's claim for refund. Debtor does not even allege double taxation under inconsistent legal theories, which is the heart of any recoupment claim. Debtor's claim for equitable recoupment is nothing more than an attempt to "allow one transaction to be offset against another". *Rothensies,* 329 U.S. at 299, 67 S.Ct. at 272. The Supreme Court has clearly stated that such an offset is not the substance of a claim for equitable recoupment.

The standards for summary judgment articulated by the Supreme Court in *Celotex* mandate granting summary judgment in favor of the IRS on this issue. The IRS has demonstrated that its claim filed in this case does not arise from the same set of operative facts, or transaction, as does the claim for refund filed by Debtor. It then fell upon Debtor to provide evidence to establish that the same transaction lead to taxation under two inconsistent legal theories. Debtor failed to do so, but instead responded that the IRS has not proved that it would be impossible for Debtor to recover.[17] This is not sufficient to overcome a motion for summary judgment under the standards of *Celotex.* Debtor is therefore time barred from bringing this claim for refund pursuant to 26 U.S.C.A. § 6511(a), and summary judgment will be granted in favor of the IRS as to the issue of Debtor's ability to assert a claim for refund of taxes allegedly due to BCCC. Debtor's motion for summary judgment in this regard will be denied. The IRS will have an unsecured claim in this bankruptcy case for the full amount designated in its proof of claim: $159,525.02.

An order in accordance with this memorandum opinion shall be entered on this date.

### ORDER

In accordance with the Memorandum Opinion entered this date, it is hereby

---

**17.** Debtor also responded that the IRS failed to prove that the statute of limitations could not be left open by agreement. This assertion is bewildering in that Debtor has never alleged or provided the Court with any evidence that any such agreement was ever in force between the parties.

ORDERED that Debtor's motion for summary judgment is hereby granted with respect to the Internal Revenue Service's status as an unsecured creditor in this Chapter 11 case. The claim filed by the Internal Revenue Service in this case shall be treated as unsecured in its entirety. The Internal Revenue Service's motion for summary judgment in this regard is denied; and it is hereby further

ORDERED that the Internal Revenue Service execute a release of its lien or liens upon Debtor's property which arose prior to Debtor's petition for bankruptcy relief; and it is hereby further

ORDERED that the Internal Revenue Service's motion for summary judgment with respect to Debtor's ability to offset tax refunds allegedly due to Bowen Commercial Construction Corporation against Debtor's individual liability is hereby granted. This order shall not effect the priority, if any, which is given the IRS claim. Debtor's motion for summary judgment in this regard is denied; and it is hereby further

ORDERED that any requests for relief inconsistent with the Memorandum Opinion entered this date are denied.